UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| AIRWAY LEASING, LLC, <br>     Plaintiff, | : <br> : <br> : | |
| v. | : <br> : | C.A. No. 18-516JJM |
| MTGLQ INVESTORS, L.P., SUNTRUST MORTGAGE, INC.,[1] MORTGAGE ELECTRONIC REGISTRATION SYSTEM, INC. and FEDERAL NATIONAL MORTGAGE ASSOCIATION, <br>     Defendants. | : <br> : <br> : <br> : <br> : <br> : <br> : <br> : | |
| and | : <br> : | |
| MTGLQ INVESTORS, L.P., <br>     Third-Party Plaintiff, | : <br> : <br> : | |
| v. | : <br> : | |
| ROCCO A. DELUCA, II, ANN-MARIE DELUCA a/k/a ANN MARIE K. DELUCA, and R.J.R. REALTY CO., <br>     Third-Party Defendants. | : <br> : <br> : <br> : <br> : | |

**REPORT AND RECOMMENDATION REGARDING MTGLQ INVESTORS, L.P.'S UNOPPOSED MOTION FOR SUMMARY JUDGMENT**

PATRICIA A. SULLIVAN, United States Magistrate Judge.

    Pursuant to a scheme concocted by an attorney who subsequently withdrew from this case because of conflicts of interest,[2] in February 2017, Plaintiff Airway Leasing, LLC ("Airway"), purchased the real estate in issue in this case (721 Woodward Road in North

---

[1] SunTrust Mortgage, Inc., is now known as Truist Bank. ECF Nos. 89; 110 ¶ 1 n.1.

[2] The scheme is well described in MTGLQ's memorandum in support of its Motion for Summary Judgment. See ECF No. 109-1 at 11-14. It also is described in MTGLQ's Statement of Undisputed Facts. See ECF No. 110 ¶¶ 20-27. When the conflict of interest of the attorney was exposed during the Rule 16 conference, the Court managed his withdrawal and the entry of successor counsel for Airway and of *pro se* appearances and the filing of an answer/crossclaim for the DeLucas. ECF Nos. 61-72.

Providence, the "Real Estate") from Ann Marie DeLuca and Rocco DeLuca ("the DeLucas") for $25,000, a fraction of its fair market value, and, as Airway was fully aware, subject to a mortgage given by the DeLucas in 2008 in connection with a $333,000 loan (the "Mortgage"). MTGLQ's Statement of Undisputed Facts, ECF No. 110 ("SUF") ¶¶ 1, 2, 20-27; ECF No. 110-1 at 2.[3]  The Mortgage has been in default since 2012.  SUF ¶¶ 6, 19; Second Amended Verified Complaint ("SAC"), ECF No. 13 ¶ 19.  As of February 2021, the total arrearage secured by the Mortgage is $497,088.60.  SUF ¶ 5.

Seeking an unblemished title unencumbered by the Mortgage, Airway sued to quiet the title and discharge the Mortgage.  ECF No. 13.  As Defendants, it named the current holder of the Mortgage, MTGLQ Investors, L.P. ("MTGLQ"), as well as all the prior holders of the Mortgage.[4]  Id.  Airway alleged that a deed in the DeLucas' chain of title from 1985, which conveyed what is now the Real Estate from Jennie Caranci to R.J.R. Realty Co. ("Caranci Deed"), has a fatally vague property description,[5] rendering the DeLucas' title defective and voiding the Mortgage that the DeLucas subsequently executed in 2008.  Id. ¶¶ 10-11.  In response, MTGLQ counterclaimed; Count II of the counterclaim seeks a judicial declaration, pursuant to R.I. Gen. Laws 9-30-1, et seq.,[6] that MTGLQ has a viable interest in the Real Estate

---

[3] Neither Airway nor the DeLucas responded to MTGLQ's Statement of Undisputed Facts; therefore, they are deemed admitted.  DRI LR Cv 56(a)(3); see also Feliciano Rivera v. Med. & Geriatric Admin. Servs. Inc., 254 F. Supp. 2d 237, 239 (D.P.R. 2003) (in unopposed motion for summary judgment, non-moving party waives right to object to material facts set forth by movant).

[4] Two of the prior holders of the Mortgage, Truist Bank ("Truist") and Mortgage Electronic Registration Systems, Inc. ("MERS"), have filed their own motion for summary judgment.  ECF No. 106.  The fourth entity sued by Airway, Federal National Mortgage Association ("FNMA"), has not joined either of the pending motions.

[5] The Caranci Deed described the Real Estate by reference to Tax Assessor's Plat and Lot numbers only; it did not set forth a description based on metes and bounds.  This Assessor's Plat, as it existed of record in 1985, cannot now be located.

[6] A request for declaratory relief in a diversity action must be pursuant to the federal Declaratory Judgment Act, 28 U.S.C. § 2201, et seq., rather than under R.I. Gen. Laws § 9-30-1, et seq.  Tocci Bldg. Corp. of N.J., Inc. v. Va. Sur. Co., 750 F. Supp. 2d 316, 320 n.2 (D. Mass. 2010).  This report and recommendation uses the federal statute.

as the holder of the Mortgage, which is valid and enforceable. ECF No. 6, Counterclaim II ¶¶ 25-27.[7] MTGLQ also brought the DeLucas, and tried to bring R.J.R. Realty Co. ("RJR"),[8] into the case as third-party defendants, seeking to reform the Caranci Deed.[9] ECF No. 10. The DeLucas crossclaimed against Truist, but not against MTGLQ. ECF No. 72.

Now pending before the Court is MTGLQ's unopposed Motion for Summary Judgment filed on February 22, 2021. ECF No. 109. The Motion seeks summary judgment against Airway in connection with all its claims against MTGLQ, as well as declaratory judgment in MTGLQ's favor on Count II of its Airway counterclaim. ECF Nos. 109; 109-1 at 5.

In ruling on a Fed. R. Civ. P. 56 motion for summary judgment, the court must examine the record evidence "in the light most favorable to, and drawing all reasonable inferences in favor of, the nonmoving party." Feliciano de la Cruz v. El Conquistador Resort & Country Club, 218 F.3d 1, 5 (1st Cir. 2000). There are no trial-worthy issues unless there is competent evidence to enable a finding favorable to the nonmoving party. Goldman v. First Nat'l Bank of Bos., 985 F.2d 1113, 1116 (1st Cir. 1993). That is, the nonmoving party cannot rest on its pleadings, but "must set forth specific facts showing that there is a genuine issue for trial." Id. (cleaned up). This approach does not change for unopposed motions because the "failure of the nonmoving party to respond to a summary judgment motion does not in itself justify summary judgment." Lopez v. Corporación Azucarera de P.R., 938 F.2d 1510, 1517 (1st Cir. 1991). "It is

---

[7] MTGLQ included its counterclaims in the original answer and did not reassert them in its answer to the SAC. See ECF No. 37. With no objection from Airway or any other party to this approach, I also am untroubled by it. At bottom, to the extent that MTGLQ was required to reassert its counterclaims, the "liberal amendment policies of the Federal Rules of Civil Procedure would require allowing [MTGLQ] to amend its answer to do so." See Ely Holdings, Ltd. v. O'Keeffe's, Inc., No. 18-cv-06721-JCS, 2021 WL 390946, at *5 n.9 (N.D. Cal. Feb. 3, 2021).

[8] The docket does not reflect that MTGLQ ever tried to serve RJR.

[9] In its brief in support of the Motion, MTGLQ advised the Court that discovery has revealed that reformation of prior conveyances is unnecessary to confirm the validity of the Mortgage. ECF No. 109-1 at 15 n.6.

well-settled that before granting an unopposed summary judgment motion, the court must inquire whether the moving party has met its burden to demonstrate undisputed facts entitling it to summary judgment as a matter of law." Aguiar-Carrasquillo v. Agosto-Alicea, 445 F.3d 19, 25 (1st Cir. 2006) (cleaned up).

MTGLQ's Motion is based on the following undisputed facts:

- After the vaguely worded Caranci Deed to RJR in 1985, the DeLucas acquired their title to the Real Estate through a series of deeds directly or indirectly from RJR; each of these clearly describes the portion of the Real Estate conveyed by metes and bounds. By 2002, all of the Real Estate was in the name of the DeLucas. SUF ¶¶ 1-17.

- The DeLucas – continuously, exclusively, openly, notoriously and adversely to any claim of Jennie Caranci or her successors – possessed and occupied most of the Real Estate ("Parcel A") from 1986 until 2017 and the remainder ("Parcels C and D") from 1998 until 2017, so that the DeLucas acquired title to all of the Real Estate by adverse possession. SUF ¶¶ 9-17, 25; SAC, ECF No. 13 ¶ 46.

- Neither Jennie Caranci nor any successor of Jennie Caranci has ever challenged the DeLucas' title to the Real Estate. ECF No. 106 at 12.[10] The DeLucas' 2016 attempt to locate any Jennie Caranci successors was unsuccessful. Truist/MERS SUF ¶ 40.[11]

- In June 2008, the DeLucas borrowed $333,000 from Truist, secured by the Mortgage on the Real Estate in which they warranted the title, covenanting that "Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant, and convey the Property." SUF ¶ 1; ECF No. 110-1 at 4.

- Through a chain of assignments, as of 2013, the Mortgage and underlying note were held by FNMA. SUF ¶ 4; Truist/MERS SUF ¶ 32.

- During 2016, the DeLucas negotiated regarding the possibility of entering into an agreement with FNMA, whereby they could deed away the Real Estate in lieu of foreclosure. After the vague description in the Caranci Deed was discovered, FNMA elected not to proceed with a deed in lieu of foreclosure. SUF ¶ 19; Truist/MERS SUF ¶¶ 37-40.

---

[10] This proposition is stated as argument but is accepted as an undisputed fact because neither Airway nor the DeLucas have presented any factual material in opposition.

[11] Like MTGLQ, MERS and Truist supported their motion for summary judgment with a Statement of Undisputed Facts, ECF No. 107 ("Truist/MERS SUF"). Because of a similar lack of opposition, those facts are also deemed to be admitted. DRI LR Cv 56(a)(3).

- In 2015, Rocco DeLuca conveyed his interest in the Real Estate to his wife, Ann-Marie DeLuca by quitclaim deed. On February 10, 2017, both DeLucas re-conveyed the Real Estate to Ann-Marie DeLuca by a corrective quitclaim deed and she immediately conveyed the Real Estate to Airway for $25,000 by quitclaim deed. SUF ¶¶ 18, 23-25.

- In July 2017, FNMA assigned the Mortgage to MTGLQ. SUF ¶ 4; Truist/MERS SUF ¶ 42.

- At all relevant times, Airway had actual notice of the Mortgage and its default status. SUF ¶ 24. Further, after the 2017 conveyance of the Real Estate to Airway, Airway made substantial improvements to the Real Estate (spending more than $100,000) while it was fully aware of the risks of these undertakings in light of the Mortgage. SUF ¶ 27.

Airway and the DeLucas originally had until March 8, 2021, to file their opposition to the MTGLQ Motion. Their motion to extend was granted, pushing the deadline to March 15, 2021. Text Order of March 9, 2021. As of this writing no opposition or response to the Motion or to MTGLQ's Statement of Undisputed Facts has been filed.

In the unopposed Motion, MTGLQ argues that it is entitled to summary judgment because Airway's attack on the viability of the Mortgage fails as a matter of law based on undisputed facts establishing that, whether or not the Caranci Deed was fatally defective (which MTGLQ does not concede),[12] by 2008, when the DeLucas gave the Mortgage to Truist <u>with warranties of title</u>, they had already acquired title to most of the Real Estate based on their

---

[12] Alternatively, MTGLQ's Motion directs the Court to Rhode Island law on the interpretation of a vaguely worded real estate conveyance, which, MTGLQ argues, establishes that there is nothing *per se* wrong with the Caranci Deed. See Hall v. Nascimento, 594 A.2d 874, 875-76 (R.I. 1991) (court looked to surrounding circumstances to construe conveyance based on maps but without metes and bounds); Sullivan v. R.I. Hosp. Trust Co., 56 R.I. 253, 259, 185 A. 148, 151 (1936) (cleaned up) (construction of deed, generally, involves giving effect to intention of parties as gathered from deed together with "surrounding circumstances"). To the contrary, the Rhode Island Supreme Court has made clear that "[a] mortgage will not be held void for uncertainty, *even as to third persons*, where by any reasonable construction it can be sustained," including by reliance on "extrinsic evidence." Option One Mortg. Co. v. Aurora Loan Servs. LLC, 78 A.3d 781, 786 (R.I. 2013) (emphasis in original). Based on these principles and the undisputed facts, MTGLQ asks the Court to construe the Caranci Deed as conveying all of the Real Estate to RJR. I have not tried to wrangle with this alternative argument. Leaving this question open, I recommend judgment in favor of MTGLQ based on the overwhelming evidence of the DeLucas' adverse possession. If the District Court disagrees, MTGLQ remains free to assert this argument.

adverse possession of "Parcel A" for well more than ten years, pursuant to R.I. Gen. Laws § 34-7-1.  See DiPippo v. Sperling, 63 A.3d 503, 508 (R.I. 2013).  Within a few months of signing the Mortgage, the DeLucas' title by adverse possession ripened as to the balance of the Real Estate ("Parcels C and D").[13]  SUF ¶¶ 1, 11-12.  Rhode Island law contemplates that such adverse possession is intended to provide a cure for just this kind of circumstance.  See Union Sav. Bank v. Taber, 13 R.I. 683, 695 (1882) ("prominent purpose" of adverse possession statute is "to make time the healer of precisely such defects as are the cause of the difficulty here, namely, defects of conveyancing").  Therefore, any potential defects in the Caranci Deed do not affect the viability of the Mortgage as to any part of the Real Estate.  See Note Cap. Grp., Inc. v. Perretta, 207 A.3d 998, 1005 (R.I. 2019) (doctrine of estoppel by deed "provides that an assignor of an interest in property (such as a mortgage), despite lacking an actual interest in the property at the time of the transfer, is prevented from denying the validity of the transfer if the assignor later acquires an interest in the property").

      Relatedly, Airway's argument that *it* can challenge the validity of the Mortgage or assert the DeLucas' ongoing adverse possession after 2008 against the Mortgage also fails.  Rhode Island law is clear that, because the DeLucas covenanted to warranties of title in the Mortgage, as their successor, Airway cannot assert adverse possession against the DeLucas' mortgagee, Truist, or against any of its successors, including MTGLQ, nor can it otherwise claim that the Mortgage is invalid.  See IDC Props., Inc. v. Goat Island S. Condo. Ass'n, Inc., 128 A.3d 383, 391 (R.I. 2015) (doctrine of estoppel by deed bars grantor from proclaiming invalidity of warranty deeds to purchasers of condominium interests given twenty years earlier); Carrozza v.

---

[13] With no dispute regarding the facts establishing adverse possession, I find that MTGLQ's factual proffer readily clears the requirement that a "party who asserts that adverse possession has occurred must establish the required elements by strict proof, that is, proof by clear and convincing evidence." Corrigan v. Nanian, 950 A.2d 1179, 1179 (R.I. 2008) (cleaned up).

Carrozza, 944 A.2d 161, 166 (R.I. 2008) (grantor who conveys via warranty deed "cannot, at some later date, reassert the validity of his title in the property against a grantee or the grantee's successors in interest"); Lewicki v. Marszalkowski, 455 A.2d 307, 308 (R.I. 1983) ("individual who conveys a parcel of Rhode Island real estate to another by warranty deed" cannot later "claim title to the identical parcel against the grantee's successor by way of adverse possession").

Before closing, I turn to Airway's claim that MTGLQ knew of the title defect caused by the Caranci Deed and yet attempted to foreclose on the Mortgage despite Airway having "spent $130,000.00 renovating the interior and exterior of the [Real Estate]." SAC, ECF No. 13 ¶ 35; see also ¶¶ 33-34. While the Complaint is vague in translating these factual allegations into a claim, read liberally, the pleading appears to assert that, if the Mortgage is valid and enforceable, Airway is entitled to be compensated by MTGLQ for these expenditures. With Airway's admission that it was fully aware of the Mortgage (and with the undisputed facts establishing that Airway was warned by the DeLucas *(non-attorneys)* about pouring money into the Real Estate before addressing the Mortgage), this claim fails as a matter of law because there are no facts that establish any basis for holding MTGLQ responsible for such expenses. See, e.g., Smith v. Sherwood & Roberts, Spokane, Inc., 441 P.2d 158, 165 (Idaho 1968) ("that a mortgagee receives on foreclosure the benefit of repairs previously done to the mortgaged property does not in itself render the mortgagee liable for the value of the repairs").

Based on the foregoing, in reliance on the undisputed facts and on MTGLQ's well-founded legal arguments, I recommend that MTGLQ's unopposed Motion for Summary Judgment (ECF No. 109) be granted. Specifically, I find that all of Airway's claims against MTGLQ fail as a matter of law and that judgment should enter in MTGLQ's favor. Further,

because this dispute is an "actual controversy within" the Court's diversity jurisdiction so that declaratory judgment is appropriate, 28 U.S.C. § 2201(a), and in reliance on the same undisputed facts and legal principles, I find that MTGLQ has established that the Mortgage is viable and recommend that the Court grant the relief sought by MTGLQ in Count II of its counterclaim – a judicial declaration confirming the interest of MTGLQ in the Real Estate as the holder of the Mortgage, which is valid and enforceable.

Any objection to this report and recommendation must be specific and must be served and filed with the Clerk of the Court within fourteen (14) days of its receipt.  See Fed. R. Civ. P. 72(b)(2); DRI LR Cv 72(d).  Failure to file specific objections in a timely manner constitutes waiver of the right to review by the district judge and the right to appeal the Court's decision.  See United States v. Lugo Guerrero, 524 F.3d 5, 14 (1st Cir. 2008); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).

/s/ Patricia A. Sullivan  
PATRICIA A. SULLIVAN  
United States Magistrate Judge  
March 26, 2021